

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN , 11

GROVER SELLERS
ATTORNEY GENERAL

Mr. C. J. Wilde
County Auditor
Corpus Christi, Texas

Dear Mr. Wilde:

Opinion No. 0-5632
Re: Whether certain companies
operating trucks in and
around Nueces County are
liable for ad valorem taxes as-
sessed by said County.

You request the opinion of this department in your
letter of September 22, 1943 upon the above question, and we
quote your letter as follows for a statement of facts:

"We shall be pleased to have you advise us as
to the status for the assessment of taxes for truck-
ing companies and railroad companies operating in
Nueces County. First, we have a situation wherein
the Southern Pacific Transport Company, which is
part of the Southern Pacific Railroad Company, op-
erates a truck, or trucks, in Nueces County exclusively,
receiving the materials shipped by the railroad com-
pany, making deliveries and also picking up deliveries
for transfer within the confines of Nueces County.
Could these trucks be considered for personal property
renditions for assessing ad valorem tax in Nueces
County? Another situation is the various automobiles
belonging to and being operated by the Central Power
and Light Company. In this case, there are a number
of trucks and motor vehicles throughout several coun-
ties in this section. Are we to consider only the
vehicles operating in Nueces County, or, shall we
consider all vehicles as being assessable in Nueces
County? Another instance, is the Transport Company
of Texas which owns and operates a number of gasoline
trucks carrying gasoline to many of the Army and Navy
Camps throughout the county, said company being do-
miciled in Nueces County."

·MMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Mr. C. J. Wilde, page 2

Replying to our request for additional information, you stated in your letter of October 14, 1943:

"Referring to your letter of September 30th, Re: Opinion Request No. O-5632, please be advised that the Transport Company of Texas is domiciled in Nueces County; the Southern Pacific Transport Company, I assume, is domiciled in Houston as it is a subsidiary of the Southern Pacific Railroad County, however, the trucks used by this concern are housed and used entirely, to the best of my knowledge, in Nueces County making deliveries of freight shipped over the Southern Pacific Lines. I, also, believe that all three companies are corporations."

We deem it desirable to treat these corporations separately. We, therefore, take up the Southern Pacific Transport Company first.

## SOUTHERN PACIFIC TRANSPORT COMPANY

The records in the office of the Secretary of State reveal that the Southern Pacific Transport Company is a Texas corporation, domiciled in Harris County, for the purpose stated in its Charter: "to transport goods, wares and merchandise, or any valuable thing." It is apparent that the Southern Pacific Transport Company is not a railroad company, even though it may be affiliated with the Southern Pacific Railroad Company, hence it is of no aid, but would only serve to confuse if we should attempt to apply the Constitutional and Statutory provisions applicable to the organization, operation, and taxation of railroad companies in an effort to arrive at a correct answer to your question. We shall revert to this later merely for the purpose of distinguishing the railroad cases from the truck and bus cases.

It is observed that your opinion request assumes as a fact, and we must as of necessity assume the same state of facts that the Southern Pacific Transport Company "operates a truck or trucks, in Nueces County exclusively, receiving the material shipped by the railroad company, making deliveries and also picking up deliveries for a transfer within the confines of Nueces County." This admitted state of facts fixes a business situs as to the trucks inquired about in Nueces

Mr. C. J. Wilde, page 3

County, as distinguished from the home office or domicile
of the corporation in Harris County.

As an abstract proposition of law, personal
property is taxable at the domicile of the owner, but where
the owner by his own voluntary act fixes a definite and
permanent situs of personal property owned by him for
business purposes in another county other than his residence
or domicile, and we think that the Southern Pacific Transport
Company has done that in this instance, thus subjecting said
trucks to ad valorem taxes by Nueces County. This rule is
very well stated in the case of John Hancock Mutual Life
Insurance Co. v. Davis, (writ of error denied) 162 S. W. (2d)
433, in the following language:

"We overrule appellants assignments of error
numbered 1, 8, 30, 31, 32, 37, 38 and 39, bottomed on
the proposition that notes and other personal property
are legally taxable only at the domicile of the owner.
This is a correct statement of an abstract proposition
of law; but we fail to see how the same is here involved.
The notes have never been taxed in the State of Texas,
and no attempt is shown to have been made to tax the
same. The owner of the notes, at its option, could
establish a situs for taxation of the notes in Waco,
McLennan County, in which event the makers of the notes,
by reason of the above quoted provisions of said deeds
of trust, would be obligated to pay the taxes assessed
against the same."

The Constitution of Texas, Article 8, Section 11
provides as follows:

"All property, whether owned by persons or corpora-
tions, shall be assessed for taxation, and the taxes paid
in the counties where situated. . ."

Article 7153 of Vernon's Annotated Civil Statutes
of 1925 provides as follows:

"All property, real and personal, except such as
is required to be listed and assessed otherwise, shall
be listed and assessed in the county where it is situated;

Mr. C. J. Wilde, page 4

and all personal property, subject to taxation and
temporarily removed from the State or county, shall
be listed and assessed in the county of the residence
of the owner thereof, or in the county where the
principal office of such owner is situated."

The trucks referred to in your letter are obviously
tangible personal property.

We think the rule has been well settled in this
State as to the county in which tangible personal property
is subject to taxation. It is stated as clearly in our
opinion No. O-3702, from which we quote, as follows, as we
shall be able to restate it:

"The rule of law applicable in Texas is, therefore,
that tangible personal property is taxable in the county
of the domicile of the owner unless the property has
acquired a permanent fixed situs of its own separate
and apart from that of the county of the owner's domi-
cile. Mere temporary absence from the county of the
owner's domicile does not give tangible personal property
a taxable situs in another county and remove it from
taxation in such county of the owner's domicile. . . .

"However, in a case where tangible personal property
does acquire a permanent situs in a county other than
the county of the owner's domicile in relation to the
tax year in question such property is taxable in the
county where the same is actually located. . . ."

The distinction we have made is recognized in the
case of Great Southern Life Insurance Co. v. City of Austin,
243 S. W. 778, (Supreme Court of Texas, opinion by Chief
Justice Cureton) from which we quote as follows:

"It is true that the actual situs of certain classes
of visible and tangible personal property, as well as
intangible property having similar characteristics, as,
for example, money, State and municipal bonds, circulating
bank notes, and shares of stock in private corporations,
may have a situs for taxation where they are permanently
kept, separate and apart from the domicile of the owner."

Mr. C. J. Wilde, page 5

We do not deem it necessary to lengthen this opinion by the citation of cumulative authorities, and we may well let it rest upon the case of Great Southern Life Insurance Company v. City of Austin, supra, by that eminent jurist, the late Chief Justice Cureton, but we note briefly a few other decisions. In the case of City of Galveston v. J. M. Guffey Petroleum Company, (writ of error refused) 113 S. W. 585, from which we quote as follows:

"The Legislature may, in certain instances, give to property an artificial situs for the purposes of taxation; but when the property is physical in character, or of a nature that can acquire an actual situs, it must under our Constitution be taxed in the county where actually situated or located. The finding of the court is to the effect that these vessels so taxed have an actual situs at Port Arthur, in the county of Jefferson, and are not and have never been within waters located within the territorial jurisdiction of the city of Galveston.

"That vessels may acquire an actual situs is a proposition too well settled to be questioned, and that the place of enrollment and registration is not controlling, if the actual situs is elsewhere. . . ." (Emphasis added)

Cooley on Taxation, Vol. 2, 4th edition, page 975, appears the following:

"The situs of tangible personal property, for purposes of taxation may be where the owner is domiciled but is not necessarily so. Unlike intangible personal property, it may acquire a taxable situs in the state other than the one where the owner is domiciled, merely because it is located there. Its taxable situs is where it is more or less permanently located, regardless of the domicile of the owner." (Emphasis added)

We must not be misled by the confusion which may arise by the loose language used in some of the decisions with respect to the rule that prevails as to the taxation of rolling stock of railroads in an effort to apply an analogy in considering the taxability of trucks and buses owned and

Mr. C. J. Wilde, page 6

operated by corporations or individuals. This distinction
is apparent, and made so by Judge Leddy in the case of Gulf
Colorado & S. F. Ry. Co. v. City of Dallas, 16 S.W. (2d)
292, (Commission of Appeals) in the following language, from
which we quote:

"The Legislature originally (Act Aug. 21, 1876
(Laws 1879, c. 157, ( 19)) subjected rolling stock of
railway companies to taxation by cities and towns by
the apportionment method, and subsequently repealed
the same in the adoption of the Revised Statutes of
1879, and later, by the passage of the Act of March 28,
1885 (Laws 1885, c. 63), expressly exempted railway
companies from the necessity of making rendition of its
rolling stock to incorporated cities and towns. We
think such action negatives the grant of authority to
the city of Dallas which is claimed to exist in this
case to tax the rolling stock of a railway company,
even though the same was situated within the city on
January 1st, and so remained for a definite time.

"The Legislature no doubt concluded that it would
not be the exercise of a sound policy to subject rolling
stock of a railway company to taxation by cities and
towns along their lines because of the confusion which
would result from efforts of different municipalities
to determine the situs of such property due to its
transitory nature. While switch engines may have more
permanency in their location than other rolling stock,
yet all locomotives belonging to a railway company
are of necessity a part of its rolling stock, the
location of which is subject to be changed from time
to time. The situs of so much of rolling stock belonging
to railway companies was indefinite and uncertain that
the Legislature was justified in classing it all as a
unit for purposes of taxation. It unquestionably had
the authority to determine the situs of rolling stock
for purposes of municipal taxation. The fact that
isolated rolling stock might in some instances appear
to have a fixed location is not sufficient to invalidate
the classification thus made.

"In the absence of a statute defining the taxable
situs of this property otherwise, it was only taxable
at the domicile of the railway company." (Emphasis added)

Mr. C. J. Wilde, page 7

Briefly, Judge Leddy has said:

"The Legislature unquestionably had the authority to determine the situs of rolling stock for purposes of municipal taxation, but having by legislative action excepted railroad companies from rendering any part of their rolling stock to incorporated cities or towns through which their lines may extend, thus precluding the city of Dallas or any other municipality from taxing the rolling stock of railroads. This exception is manifest by Article 7168, Revised Civil Statutes, which provides:

"'All personal property of whatsoever kind or character, except the rolling stock belonging to the company or in their possession in each respective county, listing and describing the said personal property in the same manner as is now required of citizens of this State.'"

Accordingly, we hold under the facts submitted by you that the trucks of the Southern Pacific Transport Company have acquired a business situs in Nueces County, thus subjecting them to ad valorem taxes by said county.

## Transport Company of Texas

According to the records of the Railroad Commission, the above named company is individually owned and is domiciled in Nueces County. The general common law rule that the situs for taxation of personal property is the domicile of the owner applies to individuals as well as corporations, unless a business situs has been acquired elsewhere, and since under the facts submitted the trucks of the Transport Company of Texas have not acquired a business situs outside of Nueces County, the domicile of the owner, we accordingly hold that, as to the trucks of the Transport Company of Texas, they are taxable in Nueces County.

Mr. C. J. Wilde, page 8

## Central Power and Light Company

Records of the Secretary of State reveal that the above named company is a Massachusetts corporation, with its principal office in Boston, Massachusetts, operating in Texas under a permit. Its application for permission to do business in this State, filed in 1936, states: "Business in the State of Texas is to be transacted at Corpus Christi, Nueces County, Texas, and all other counties in Texas. The name of the manager or person in charge of said Texas business or agency will be Mr. James C. Kennedy, Corpus Christi, Texas, 714 Nixon Building."

Article 8, Section 11 of the Texas Constitution provides as quoted above. Article 7153, R. C. S. provides:

"All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated; and all personal property, subject to taxation and temporarily removed from the State or county, shall be listed and assessed in the county of the residence of the owner thereof, or in the county where the principal office of such owner is situated."

In Guaranty Life Insurance Company v. City of Austin, 190 S. W. 189, Chief Justice Phillips, speaking for the Supreme Court, said:

"This article clearly contemplates that any property classified as personal property by article 7505 and having a concrete form may acquire a _situs_ distinct from the place of the owner's residence. It provides that personal property 'temporarily removed from the state or county' shall be taxed in the county of the owner's residence. This is a provision with respect only to personal property 'temporarily removed from the county or state.' It has no application to personal property whose removal is not temporary, but which has acquired a _situs_ in a different county. If the removal from the county of the owner's residence be only temporary, it could not under the article acquire a _situs_ elsewhere; it is to be regarded as still 'situated' in the county of the owner's residence and is therefore taxable there. The article makes it plain,

Mr. C. J. Wilde, page 9

however, that if the removal be not of a temporary character and the property has acquired a _situs_ in a different county, it is taxable in such county, unless within the exception of the article and therefore expressly made taxable elsewhere."

The fact that personal property of a foreign corporation physically located in this State is subject to taxation in this State appears to be well settled. Texas Land and Cattle Co. v. City of Fort Worth, 73 S. W. (2d) 860, error refused; Jesse French Piano and Organ Co. v. City of Dallas, 61 S. W. 942, error refused; 40 Tex. Jur. 35.

From the foregoing it is apparent that under the weight of authority, personal tangible property of a foreign corporation doing business in this State is taxable where the property is actually physically located and used in the business of the corporation, and where it has its Texas office and place of business if its removal therefrom be only of a temporary nature. Therefore, if the trucks of the Central Power and Light Company operate from the garage or storage base in Corpus Christi, Nueces County, Texas, upon a temporary basis, from which the operations initiate and to which they return, in such way as not to acquire a business situs elsewhere, said trucks are accordingly taxable in Nueces County. However, if any of the trucks and automobiles of this concern are kept outside of Nueces County upon a permanent basis, as distinguished from a temporary basis, they would not be taxable in Nueces County.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED FEB 18, 1944

ATTORNEY GENERAL OF TEXAS

By

D. P. Lollar
Assistant

LPL:AMM